### SLOAT BROTHERS *v.* ROUNTREE.

1. Where one gives another permission to occupy a house until a tenant is obtained for the year, the occupant is entitled to reasonable notice that a tenant has been obtained.
2. Where the suit is against the tenant for holding over after the expiration of a definite term, a sufficient reply to it is that the landlord consented for him to hold over. If the real cause of action be damages resulting from the violation of the terms of this consent, that cause should be alleged in the declaration.

July 8, 1891. By two Justices.

Landlord and tenant. Notice. Damages. Pleadings. Before Judge HANSELL. Lowndes superior court. November term, 1890.

Rountree by his petition alleged that he rented to Sloat Brothers a house and lot for a term to be fully completed on December 31, 1884; that they failed and refused to deliver possession of the premises at the termination of the term, though frequently required to do so, and thereby prevented him from renting the premises for 1885, causing him to lose the rent, $125, and also caused the premises to be damaged $75 by reason of being unoccupied during the year 1885, to his damage in the aggregate $200. He obtained a verdict for $125 damages, with interest. The defendants' motion for a new trial was overruled, and they excepted.

The evidence for the plaintiff, briefly stated, was: He rented the house and lot to defendants some time during February or March, 1884, for the balance of the year 1884, for $10 per month, the usual price of the house being $125 per year. On the first day of January, 1885, one of the defendants came to him and said that his business was not in shape for him to leave the house, though his time had expired, and wanted to hold the house a few days longer before he got ready to move. Plaintiff told him he was perfectly willing to accommodate him unless he could find a tenant for the year, if he found a tenant he must have the house and lot; and defendant replied that he would not ask plaintiff to lose a tenant and would get out if necessary to prevent that. With the understanding that he would get out when plaintiff found another tenant, plaintiff consented for him to stay in the house until he got another tenant. Plaintiff rented the house and lot to one Williams for the year 1885, after he saw this one of defendants, for $125, provided a Mrs. Hester stood Williams' security for the money, and Williams went out and got his things

and returned with them and notes for that sum, properly signed by himself and Mrs. Hester. This was on Saturday, January 3, 1885. Williams notified the defendants, and they refused to let him have the house, or one room in which to store his goods, and he went away and rented another house, and the notes were returned to him. Plaintiff failed to find a tenant for the house after that time, though he tried to rent it. Rent contracts are usually made the latter part of the year for the ensuing year. The rent for that year was worth $125, and plaintiff considered the house damaged $10 more than it would have been if occupied. Defendants left the house about the 15th of January, not within three days after Williams wanted to get in. Plaintiff's son may have told one of defendants that if plaintiff had no chance to rent the house, he had no objection to defendants staying there.

For defendants the testimony was: Early in 1884 one of defendants rented from plaintiff the house and lot for the balance of the year for $10 per month, to be paid monthly. About the middle of November, 1884, he went to plaintiff's son to settle for his rent, and told him that it might be he would not be able to get out on the first of January, 1885, and asked if he could remain in the house a few days longer, and probably one month; and plaintiff's son answered that he could stay in the house until he got a tenant, and they would notify him when to get out. He remained in the house after the first of January by consent of plaintiff. On the 3d of January, 1885, he received written notice to vacate the house, or proceedings would be instituted, and in accordance with that notice he vacated the house on the 5th day of January, 1885. He may have heard that the plaintiff wanted the house by the first day of January, but had received no notice until that day; when he went down town he told his cook that if anybody came

to move in, to tell them they could put their things in the piazza until he could get out, which would be in a day or two. The piazza was not large; it was sprinkling rain, and the things might have got wet if they had been put in the piazza.

J. R. SLATER and W. H. RAMSEY, by J. II. LUMPKIN, for plaintiffs in error.

D. W. ROUNTREE and WILKINSON & ASHLEY, contra.

BLECKLEY, Chief Justice.

1. As the landlord consented that his tenants might hold over after the expiration of their term until he found another tenant for the new year, some reasonable notice that a tenant was found ought to have been given before the new tenant attempted to move in. It could not be expected that an occupant having permission to remain for an indefinite time would hold himself ready to vacate at any and every moment. Certainly a few hours' if not a few days' warning might reasonably be expected in such a case. Here the evidence indicated that the new tenant appeared at the house with some of his goods to enter immediately, and that failing to be admitted, he claimed and exercised the right of cancelling his contract with the landlord.

2. But the decisive point in the case is that the evidence does not support the declaration. The declaration complains of holding over after the expiration of the original term of renting. The proof shows that the landlord consented to this; and that consent is certainly a sufficient reply to the holding over complained of. The real cause of action, if any, is a violation of the terms of this consent, and neither the consent nor the violation is referred to in the declaration. They should both have been alleged in order to recover. Certainly, according to the evidence, the defendants were entitled to hold over beyond the expiration of the original term. They were in no default, on any view of the case, until

after the new tenant was found, and that new tenant did not make his appearance until three days after the definite term mentioned in the declaration had run out. At that time the defendants were in possession under a new agreement, which agreement is not mentioned in the declaration. The action as brought was well defended. The court erred in not granting a new trial.

*Judgment reversed.*